IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:    PATRICIA L. CRUICKSHANKS,    Case No. 12-37058-KRH
                                       Chapter 13
         Debtor.
_____

PATRICIA L. CRUICKSHANKS,

         Plaintiff,

v.                                     APN: 13-03094

THE PERMBERTON OAKS TOWNHOUSE
ASSOCIATION, INC.,

         Defendant.
_____

## **MEMORANDUM OPINION**

Before the Court is the Complaint filed by Patricia L. Cruickshanks (the "Debtor") to determine the validity, priority, or extent of liens asserted by The Pemberton Oaks Townhouse Association, Inc. (the "Defendant"). The Debtor seeks the release of Defendant's judgment liens and assessment liens against Debtor's property.

On December 12, 2012, the Debtor filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code (the "Petition Date"). 11 U.S.C. § 101 *et. seq.* (the "Bankruptcy Code"). The Debtor's bankruptcy estate includes an interest in real property known as 3061 Montfort Loop, Henrico, VA (the "Property"). The Property is a townhome located in the Pemberton Oaks subdivision. The Defendant is the property owners' association for the

subdivision (the "Association").  The Debtor acquired the Property on October 30, 1995.[1]  At the time the Debtor became the fee simple owner of the Property, and at all times since, the Property was subject to a declaration of various real covenants dated October 8, 1992, and recorded in the Clerk's Office of the Henrico County Circuit Court in deed book 2429 at page 256 (the "Declaration").

The parties do not dispute that the real covenants set forth in the Declaration run with the land.  Such covenants are enforceable if there exists: "(1) horizontal privity; (2) vertical privity; (3) intent for the restriction to run with the land; (4) that the restriction touches and concerns the land; and (5) that the covenant is in writing."  *Barner v. Chappell*, 266 Va. 277, 283 (2003) (citing *Waynesboro Village, L.L.C. v. BMC Properties*, 255 Va. 75 (1998); *Sloan v. Johnson*, 254 Va. 271 (1997)).  Defendant contends that the Declaration "creates a valid lien that burdens and benefits the [Property]."[2]

The Property is encumbered by a duly recorded first deed of trust securing indebtedness held by HSBC Bank USA National Association as Trustee for GSMPS 2005-RPI ("HSBC").  The deed of trust for the benefit of HSBC is dated November 29, 1993, and is recorded in the Clerk's Office of the Henrico County Circuit Court in deed book 2447 at page 728 ("First Deed of Trust").  As of the Petition Date, the indebtedness secured by the First Deed of Trust had an approximate balance of $76,881.95.

---

[1] The Debtor acquired the Property by deed, recorded in the Clerk's Office of the Henrico County Circuit Court in deed book 2616 at page 705 from Krzysztof and Teresa Kundo.

[2] Defendant asserts that the Declaration was an integral part of an ongoing series of transactions between Pemberton Oaks Corporation (the "Declarant") and the Association, including the Declarant's conveyance of certain common areas to the Association, as well as the Association's access to and improvement of land that continued to be owned by the Declarant, all for the mutually agreed general benefit of the land's being encumbered by the Declaration.  Citing *Richardson v. AMRESCO Residential Mortgage Corp.,* 267 Va. 43 (2004), Defendant argues that the Debtor had constructive notice of the Declaration by virtue of a direct chain of title between the Declarant and the Debtor and by virtue of the recordation of the Declaration with reference to the recorded subdivision plat within which the Property was situated.

The Property is further encumbered by a duly recorded second deed of trust securing indebtedness held by the Henrico County Federal Credit Union (the "Credit Union"). The deed of trust for the benefit of the Credit Union is dated April 1, 2003, and is recorded in the Clerk's Office of the Henrico County Circuit Court in deed book 3423 at page 1324 (the "Second Deed of Trust"). As of the Petition Date, the indebtedness secured by the Second Deed of Trust had an approximate balance of $76,842.83.

Between 2009 and 2011, the Defendant docketed five (5) judgment liens against the Property totaling $14,401.00 plus interest.[3] Prior to the Petition Date, the Defendant levied monthly assessments against the Property in the amount of $8,083.90, as well as $33,076.53 in legal fees. The total amount claimed by the Defendant is $41,160.43.[4] As of April 10, 2013, the Defendant had failed to file a proof of claim in the Debtor's Chapter 13 bankruptcy case.[5]

The Debtor commenced this adversary proceeding on May 3, 2013, by filing a complaint against the Defendant for a determination as to the priority and extent of the liens asserted by Defendant against the Property. The Defendant filed an answer and counterclaim on June 5, 2013.[6] By order entered January 10, 2014, the Court permitted the parties to waive trial in this

---

[3] While Defendant concedes that its judgment liens can be avoided under 11 U.S.C. § 522(f), it contends that the liens securing its assessments are "fundamentally distinct security interests in the Property," *cf. In re King*, 208 B.R. 376 (Bankr. D. Md. 1997) ("[T]he condominium lien obtained pursuant to the applicable subject provisions of Maryland law is not a judicial lien as defined under the Bankruptcy Code. Therefore, Debtor may not avoid the condominium lien under 11 U.S.C. § 522(f)(1).").

[4] A special assessment resulted from extensive litigation over alleged covenant violations. This amount reflects the combined balance for unpaid assessments, late fees, interest, and collection costs including attorneys' fees.

[5] The deadline to file claims expired on April 10, 2013. No motion has been filed by the Defendant for leave to file a late proof of claim. Accordingly, Defendant does not have an allowed claim in the Debtor's Chapter 13 bankruptcy case. 11 U.S.C. § 502.

[6] The counterclaim contains eight (8) different counts. The counterclaim was filed after the expiration of the claims bar date; and accordingly, the prepetition claims asserted against the Debtor therein are untimely. Defendant's dischargeability count has been rendered moot, as it has no allowed claim. In addition, the Defendant failed to name the beneficiary under the Second Deed of Trust as a party to its counterclaim, thus rendering the relief requested against that party improper. *See Mendenhall v. Douglas L. Cooper, Inc.*, 239 Va. 71, 74-75, 387 S.E.2d 468, 470 (1990) (citing *Bonsal*, 111 Va. at 597–98, 69 S.E. at 979 (citing *Barney v. Baltimore City*, 73 U.S. (6 Wall.) 280,

adversary proceeding and to submit the matter for resolution on stipulated facts following briefing on the merits. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.[7]

The Court has subject-matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), and (O). Venue is appropriate pursuant to 28 U.S.C. § 1409. Venue is appropriate pursuant to 28 U.S.C. § 1409.

The parties have stipulated for purposes of this matter that the value of the Property is $139,300.[8] The indebtedness secured by First and Second Deeds of Trust encumbering the Property totals $153,724.78. Accordingly, the Debtor has no equity in the Property. The Debtor claims that Defendant's asserted liens are third in priority behind the First and Second Deeds of Trust. Given the value of the Property and the prior encumbrances, Debtor contends that Defendant's liens are wholly unsecured and should be removed from the Property.

The Fourth Circuit Court of Appeals recently affirmed the decision it had previously issued in its unpublished opinion, *Suntrust Bank v. Millard (In re Millard)*, No. 09-2266, 404 F. App'x 804 (4th Cir. 2010), that a debtor in a case under Chapter 13 of the Bankruptcy Code may remove wholly unsecured liens that may encumber the debtor's property. *See In re Davis*, 716

---

284, 18 L.Ed. 825 (1867))). For purposes of this Memorandum Opinion the counterclaim is considered only to the extent it can be construed as raising affirmative defenses to the Complaint under Rule 7008 of the Federal Rules of Bankruptcy Procedure or as moving for relief from stay under § 362 of the Bankruptcy Code.

[7] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

[8] According to the Property Tax Assessment dated February 5, 2013, the taxed assessed value of the Property is $145,800. The land was assessed at $42,000 and the improvements were assessed at $103,800 for a total of $145,800. For purposes of this Memorandum Opinion, the Court will use the Property value to which the parties stipulated.

F.3d 331 (4th Cir. 2013). The Fourth Circuit noted that a claimant's secured status is determined by the value of its collateral. 11 U.S.C. § 506(a).[9] Accordingly, it concluded that a completely valueless lien should be classified as an unsecured claim. The Fourth Circuit acknowledged that:

> the Supreme Court has interpreted *section 1322(b)(2)* as precluding a "strip down" of a partially secured lien against a principal residence in Chapter 13. That is, a debtor may not reduce an underwater mortgage to the value of the principal residence because partially secured lienholders are "holders of secured claims" protected against lien modification. *Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 331-32, 113 S. Ct. 2106, 124 L. Ed. 2d 228 (1993). *Nobelman* notwithstanding, however, courts have generally permitted a "strip off" of completely valueless liens in Chapter 13 cases because, unlike the lienholder in *Nobelman*, holders of such liens are not "holders of secured claims" and, therefore, are not entitled to the protection of *section 1322(b)(2)*.

*In re Davis*, 716 F.3d at 335-36.

Defendant counters that its liens are inferior only to the First Deed of Trust on the Property. Virginia is a "race-notice" real estate lien jurisdiction. As such, it adheres to a first in time, first in right priority scheme. The first to properly record a lien against real property with the Clerk's Office of the applicable jurisdiction has priority over subsequently recorded liens. *Duty v. Duty*, 661 S.E.2d 476, 479-80 (Va. 2008); *see also* Va. Code Ann. § 55-96(A)(1); *Hart v. Pace*, 49 Va. Cir. 434, 435 (1999) ("In Virginia, the priority for liens and conveyances depends upon a race to the courthouse. The person recording an interest in real estate first, absent a fraud of some sort, has priority over all those who record later."). The First Deed of Trust was recorded against the Property in November 1993. The Second Deed of Trust was recorded against the Property in April 2003. The assessments that the Defendant claims constitute liens on the Property were not accrued until 2009-2011. Accordingly, the Defendant's liens would appear to be third in priority. Defendant, as the entity asserting the second priority interest in the

---

[9] Section 506(a) of the Bankruptcy Code provides in pertinent part that: "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a).

Property, has the burden of proof on the issue of the validity, priority, or extent of its liens. 11 U.S.C. § 363(p)(2). A "preponderance of the evidence" standard is applicable in this adversary proceeding. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); *see, e.g.*, *In re Santaella*, 298 B.R. 793, 799-800 (Bankr. S.D. Fla. 2002); *see also In re Galanis*, 334 B.R. 685 (Bankr. D. Utah 2005).

Defendant asserts that the Declaration was recorded in 1992 prior to recordation of both the First and the Second Deeds of Trust. Defendant argues that it is the Declaration that establishes the valid liens for its assessments against the Property. The covenants set forth in the Declaration expressly subordinate the assessment liens arising thereunder only to real estate tax liens and to duly recorded first deeds of trust.[10] As the Second Deed of Trust does not fall under either of these two excepted categories and as the Declaration was recorded prior to the Second Deed of Trust, Defendant argues that its liens arising thereunder have priority over the Second Deed of Trust.[11] Defendant concludes that its second priority liens are fully secured by the value of the Property and, accordingly, are not subject to removal under *In re Davis*[12].

Property owners' associations and subdivisions are governed by statute in Virginia. The Virginia Property Owners' Act (the "Act"), which is set forth in Chapter 26 of Title 55 of the

---

[10] The Declaration contains the following provision. "Creation of the Lien and Personal Obligation of Assessments: [E]ach Owner of any Lot by acceptance of a deed therefore, regardless of whether it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association: (1) annual assessments or charges, and (2) special assessments for capital improvements and otherwise, such assessments to be established and collected as hereinafter provided. The annual and special assessments, together with interests, costs, and reasonable attorney's fees, shall be a charge on the land and shall be a continuing pro rata lien upon the Lot against which each such assessment is made, inferior in lien and dignity only to real estate taxes and, to the extent applicable law shall provide otherwise, bona fide duly recorded first deeds of trust on each Lot." Def.'s Ex. B at 7.

[11] Without citing to a single authority supporting the proposition, Defendant asserts that this result "should not come as any surprise to the [Credit Union as beneficiary under the second Deed of Trust] as these types of liens have been recorded and given proper effect for decades as a matter of black letter real property law."

[12] *See supra* pp.4-5.

6

Code of Virginia,[13] applies to all developments subject to a declaration, as defined [in the Act], initially recorded after January 1, 1959, associations incorporated or otherwise organized after such date, and all subdivisions created under the former Subdivided Land Sales Act."[14]  Va. Code § 55-508(A).  The Act authorizes homeowners' associations to levy both general and special assessments against lots included in a development.  The Act further provides the mechanism for homeowners' associations to obtain liens on lots for unpaid assessments.  The Act strictly adheres to Virginia's "race-notice" priority lien structure governing real property.  According to Section 55-516(A) of the Code of Virginia, an assessment lien "shall be prior to all other *subsequent* liens and encumbrances" (emphasis added).  No lien for an assessment exists until it is perfected.  Section 55-516(A) of the Code of Virginia reads, in pertinent part:

> Once perfected, the association shall have a lien on every lot for unpaid assessments levied against that lot in accordance with the provisions of this chapter and all lawful provisions of the declaration.  The lien, once perfected, shall be prior to all other subsequent liens and encumbrances except (i) real estate tax liens on that lot, (ii) liens and encumbrances recorded prior to the recordation of the declaration, and (iii) sums unpaid on and owing under any mortgage or deed of trust recorded prior to the perfection of said lien.

Va. Code Ann. § 55-516(A).  The Act details specific requirements for perfecting such a lien:

> The association, in order to perfect the lien given by this section, shall file before the expiration of 12 months from the time the first such assessment became due and payable in the clerk's office of the circuit court in the county or city in which such development is situated, a memorandum, verified by the oath of the principal officer of the association, or such other officer or officers as the declaration may specify. . . .[15]

---

[13] Va. Code §§ 55-508-516.

[14] This same language was included in the 1992 version of the Act which was in effect at the time the Declaration was recorded.

[15] Such memorandum must contain: (i) the name of the development; (ii) a description of the lot; (iii) the name or names of the persons constituting owners of that lot; (iv) the amount of unpaid assessments currently due or past due relative to such lot together with the date when each fell due; (v) the date of issuance of the memorandum; (vi) the name of the association and the name and current address of the person to contact to arrange for payment or release

Va. Code Ann. § 55-516(B). The Defendant has provided no evidence that a memorandum of lien was ever filed in Henrico County in order to perfect the liens it asserts against the Property for its assessments. As the Defendant has failed to follow the procedures outlined in the Act, it does not have a properly perfected lien against the Property.

Had the Defendant properly perfected its lien in accordance with the requirements set forth in § 55-516 of the Code of Virginia, Defendant's lien would still be inferior to the First and Second Deeds of Trust. The lien does not relate back to the date of the Declaration, but arises, as would any other lien, on and after the date of perfection.[16] The First Deed of Trust was recorded on the Property in November 1993. The Second Deed of Trust was recorded in April 2003. The assessments for which the Defendant claims it has liens on the Property were not levied until 2009-2011. Had Defendant's liens been properly perfected, they would have arisen subsequent in time to the First and Second Deeds of Trust and be inferior thereto consistent with Virginia's "race-notice" priority scheme and Section 55-516(A) of the Code of Virginia.

Defendant concocts a misguided argument about why its Declaration should not be subject to the Act. Defendant quotes the following passage from Section 55-508(A) of the Code of Virginia in support of this proposition:

> This chapter shall not be construed to affect the validity of any provision of any declaration recorded prior to July 1, 1998; however, any development established prior to the enactment of the former Subdivided Land Sales Act may specifically provide for the applicability of the provisions of this chapter.

---

of the lien; and (vii) a statement that the association is obtaining a lien in accordance with the provisions of the Virginia Property Owners' Association Act as set forth in Chapter 26 of Title 55.

[16] Defendant argues the 1992 Declaration recordation date became the recordation date for any maintenance assessment liens that followed. This is simply incorrect. The Declaration gave the Defendant the right to assert a lien for unpaid maintenance assessments. This authority can only be exercised in accordance with Virginia's carefully crafted statutory scheme.

8

Va. Code § 55-508(A). As Defendant's Declaration was recorded in October of 1992, Defendant reasons that the Act should not be construed to invalidate the "Creation of the Lien and Personal Obligation of Assessments" provision in its Declaration.[17] But the Act does nothing to invalidate the authority conferred on Defendant by the Declaration to levy or enforce maintenance assessments. Rather, it complements the Declaration by providing the mechanism for creating and perfecting such liens. Defendant cannot employ language in the Declaration to supersede established Virginia law. The version of the Act that was in effect on the date Defendant's Declaration was recorded had the same requirements for perfecting assessment liens as exist under the present statutory scheme. *See* Virginia Acts of Assembly, Property Owners' Association Act - 1992 Virginia Laws Ch. 677 (H.B. 227).

The passage quoted by Defendant was not intended to release the Defendant from its obligation to comply with the Act. It merely clarifies that the 1998 amendment to the Act did not serve to invalidate the lawful provisions contained in prior declarations. The Act, itself, was established in 1989, four years prior to the recordation of Defendant's Declaration. A separate sentence from the same section quoted by Defendant clarifies that the Act "shall apply to developments subject to a declaration . . . initially recorded after January 1, 1959." That includes the Declaration at bar.

The Court concludes that Defendant's liens against the Property were never perfected and, therefore, do not encumber the Property. Had the Defendant properly perfected the liens, they, nevertheless, would be subordinate to the First and Second Deeds of Trust. As the value of the Property is $139,900 and the indebtedness secured by First and Second Deeds of Trust aggregates over $153,724 as of the Petition Date, the Defendant's assessment liens would be

---

[17] *See supra* note 13.

wholly unsecured. Accordingly, to the extent any such assessment liens do arise, they may be removed against the Debtor's Property. *In re Davis*, 716 F.3d 331 (4th Cir. 2013); *Suntrust Bank v. Millard (In re Millard)*, No. 09-2266, 404 F. App'x 804 (4th Cir. 2010). Judgment will be entered in favor of the Debtor.

A separate order shall issue.

ENTERED: <u>  June 10 2014  </u>

          <u>  /s/ Kevin R Huennekens  </u>
          UNITED STATES BANKRUPTCY COURT

Entered on Docket:   June 10 2014